[Cite as *State v. Mickey*, 2020-Ohio-1432.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2019-07-055 |
| | | CA2019-07-056 |
| | : | |
| - vs - | : | O P I N I O N |
| | : | 4/13/2020 |
| RANDALL S. MICKEY, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case Nos. 2018-CR-00127 and 2018-CR-00407

D. Vincent Faris, Clermont County Prosecuting Attorney, Nick Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee

W. Stephen Haynes, Clermont County Public Defender, Robert F. Benintendi, 302 East Main Street, Batavia, Ohio 45103, for appellant

**HENDRICKSON, P.J.**

{¶ 1} Appellant, Randall S. Mickey, appeals from his conviction and sentence in the Clermont County Court of Common Pleas for having weapons under disability, improperly handling a firearm in a motor vehicle, resisting arrest, aggravated trafficking in drugs, aggravated possession of drugs, and possession of cocaine. For the reasons set forth below, we affirm appellant's conviction and sentence.

{¶ 2} Around 12:00 p.m. on February 3, 2018, Miami Township Police Officer Todd Taylor was on routine patrol and had just driven through an apartment complex in Milford, Ohio that was known for its high drug activity. As he was leaving the apartment complex, Officer Taylor noticed a gray Honda Accord entering the complex. As the gray Accord passed by his vehicle, Officer Taylor detected an odor of burnt marijuana. Officer Taylor turned his vehicle around and followed the gray Accord back into the complex. Although Officer Taylor briefly lost sight of the vehicle, he located the vehicle parked in front of one of the apartment buildings. Officer Taylor parked 30 to 50 feet away from the vehicle and approached on foot.

{¶ 3} Officer Taylor noticed that the odor of burnt marijuana grew stronger the closer he got to the gray Accord. An individual, later identified as appellant, sat in the front passenger seat of the Accord, with the passenger door slightly ajar. There was no one in the driver's seat of the vehicle. As Officer Taylor approached, appellant tried to close the passenger door. However, Officer Taylor was able to grab the door to keep it open. Officer Taylor observed appellant make furtive movements in the car, and Officer Taylor instructed appellant to keep his hands where they could be seen. While this occurred, Officer Taylor observed a small bag of marijuana sitting in plain view in an open console space.

{¶ 4} Appellant became argumentative with Officer Taylor and repeatedly tried to exit the vehicle, stating that the Accord was not his car. For safety reasons, Officer Taylor attempted to keep appellant from exiting the vehicle. Officer Taylor pointed out the baggie of marijuana in the console, and appellant handed it over. Officer Taylor placed the marijuana on the car's hood as appellant once again attempted to exit the vehicle. After appellant succeeded in exiting the vehicle, Officer Taylor attempted to detain appellant. However, appellant resisted Officer Taylor's attempts to pat him down and place him in

- 2 -

handcuffs. Appellant spun around, flailed his arms, and attempted to escape. This led to a lengthy scuffle. During the scuffle, Officer Taylor observed an unidentified man standing in the breezeway of an apartment building. The unidentified man watched Officer Taylor's struggle with appellant and refused Officer Taylor's instructions to remove his hands from his pockets.

{¶ 5} At some point during their struggle, appellant broke free from Officer Taylor. Officer Taylor was able to grab the back of appellant's hoodie and the two ended up in the middle of the parking lot. While ignoring Officer Taylor's repeated instructions to stop resisting, appellant threw something in the air and screamed "Get this! Help!" to the unidentified man in the breezeway.

{¶ 6} While Officer Taylor was struggling to detain appellant, a second officer arrived on the scene to help. Officer Taylor and appellant were struggling between a Black Mazda and a gold Honda CRV when Officer Kyle Ball reached them. Officer Ball saw appellant break free from Officer Taylor and come towards him. Appellant was holding a white phone charger and what appeared to be a black computer mouse. Officer Ball quickly grabbed appellant and took him to the ground to secure him. Officer Ball then conducted a pat down of appellant and found the cell phone charger and $647 in cash in appellant's sock. The officer could not locate the computer mouse.

{¶ 7} Appellant was placed in a police cruiser and the officers went to search the gray Accord. Upon reapproaching the vehicle, Officer Taylor noticed there was a young woman in the back seat. Officer Taylor had not seen her earlier due to the vehicle's heavily tinted windows. The woman, who was appellant's girlfriend, had a small amount of marijuana and alcohol in her purse. She was charged with marijuana possession and underage consumption before being driven home by officers.

{¶ 8} During Officer Taylor's search of the gray Accord, he found a loaded 9 mm Kahr handgun with a bullet in the chamber underneath the front passenger seat where appellant had been sitting. Testing later revealed that the handgun was operable. Officer Taylor questioned appellant about the firearm, and appellant admitted that the handgun was his and that he kept it for protection purposes as he had previously been shot.

{¶ 9} In the center console of the gray Accord, Officer Taylor found a bag containing a white powdery substance that appeared to be cocaine, heroin, or fentanyl. Officer Taylor explained the bag was accessible to someone sitting in the passenger seat and nothing had to be moved in order for him to see it sitting in the console. The bag was sitting on a large stack of Ohio lottery cards, which are often used as bindles to package drugs for sale. Appellant denied that the bag of white powder was his.

{¶ 10} While Officer Taylor was searching the gray Accord, additional officers arrived on scene. Sargent Robert Hirsch and Officer Murray attempted to locate the unidentified male that Officer Taylor had seen standing in the breezeway. Despite knocking on apartment doors and searching the nearby area, the officers were unsuccessful in locating the male.

{¶ 11} Sargent Hirsch also helped process the crime scene. Approximately 10 feet from where appellant had been secured by Officer Ball, Sargent Hirsch found an unusually heavy black computer mouse. The mouse could be opened, and once opened, it was revealed to be a digital scale with white residue all over it. Both the mouse and the bag of white powder were sent to the Hamilton County Crime Lab to be tested. The bag turned out to be 31.448 grams of fentanyl and the residue on the scale tested positive for cocaine and fentanyl.

{¶ 12} The day after the crime scene was processed and appellant was arrested, the

police received a phone call from a man claiming to be the driver of the gray Accord. The man stated that his name was that of a famous UFC fighter, which the police officers believed to be false. Though this man stated he would come in for questioning, he never reported to the police department.

{¶ 13} On February 13, 2018, appellant was indicted in Clermont County Common Pleas Case No. 2018-CR-00127 on one count of having weapons under disability in violation of R.C. 2923.13(A)(3), a felony of the third degree, one count of improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16(B), a felony of the fourth degree, and one count of resisting arrest in violation of R.C. 2921.33(A), a misdemeanor of the second degree. Subsequently, on May 22, 2018, he was indicted in Clermont County Common Pleas Case No. 2018-CR-00407 on one count of aggravated trafficking in drugs (fentanyl) in violation of R.C. 2925.03(A)(2), a felony of the third degree, one count of aggravated possession of drugs (fentanyl) in violation of R.C. 2925.11(A), a felony of the third degree, and one count of possession of cocaine in violation of R.C. 2925.11(A), a felony of the fifth degree. The indictment specified that the amount of the drug involved in the charges for aggravated trafficking in drugs and aggravated possession of drugs equaled or exceeded the bulk amount but was less than five times the bulk amount. Appellant pled not guilty to the charges, and the cases were consolidated.

{¶ 14} Appellant waived his right to a jury trial and was tried to the bench. Over the course of a two-day trial, the state presented testimony from four Miami Township police officers. At the conclusion of the state's case-in-chief, appellant moved for acquittal pursuant to Crim.R. 29. The trial court denied the motion, appellant rested his defense without calling any witnesses, and the trial court took the matter under advisement. On February 19, 2019, the court issued its judgment finding appellant guilty of all offenses

charged under the two indictments.

{¶ 15} Appellant was sentenced on May 20, 2019. With respect to Case No. 2018-CR-00127, appellant was sentenced to 30 months in prison for having weapons under disability, 15 months in prison for the improper handling of a firearm, and 90 days in jail for resisting arrest. These sentences were run concurrently to one another, for a total prison term in Case No. 2018-CR-00127 of 30 months. With respect to Case No. 2018-CR-00407, the trial court determined appellant's convictions for aggravated trafficking in drugs and aggravated possession of drugs were allied offenses of similar import. The state elected to proceed on aggravated trafficking in drugs, and appellant was sentenced to 30 months in prison for this offense. He was also sentenced to a concurrent 12-month prison term for possession of cocaine, for a total prison term in Case No. 2018-CR-00407 of 30 months. The court than ran the 30-month prison sentence imposed in Case No 2018-CR-00407 and the 30-month prison sentence imposed in Case No. 2018-CR-00127 consecutively to one another, for an aggregate prison term of 60 months.

{¶ 16} Appellant timely appealed, raising three assignments of error for review. For ease of discussion, we will address appellant's first and second assignments of error together.

{¶ 17} Assignment of Error No. 1:

{¶ 18} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT BY FAILING TO GRANT DEFENDANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL BECAUSE THE STATE FAILED TO ESTABLISH GUILT BEYOND A REASONABLE DOUBT.

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY

BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 21} In his first and second assignments of error, appellant argues that his convictions for aggravated possession of drugs and aggravated trafficking in drugs were not supported by sufficient evidence and were against the manifest weight. He contends the evidence presented at trial failed to demonstrate that he possessed fentanyl or, with respect to his trafficking conviction, that he transported, delivered, or distributed fentanyl intended for sale or resale. He does not challenge any of his other convictions.

{¶ 22} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion under the same standard as that used to review a sufficiency-of-the-evidence claim. *State v. Mota*, 12th Dist. Warren No. CA2007-06-082, 2008-Ohio-4163, ¶ 5; *State v. Huston*, 12th Dist. Fayette Nos. CA2006-05-021 and CA2006-06-022, 2007-Ohio-4118, ¶ 5.

{¶ 23} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 24} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387. Furthermore, although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

**Aggravated Possession of Drugs**

{¶ 25} Appellant was convicted of aggravated possession of drugs in violation of R.C. 2925.11(A), which provides that "[n]o person shall knowingly obtain, possess, or use

a controlled substance or controlled substance analog." Where the "amount of the drug involved equals or exceeds the bulk amount but is less than five times the bulk amount," aggravated possession of drugs is a felony of the third degree. R.C. 2525.11(C)(1)(b). Fentanyl is a schedule II drug, and the "bulk amount" for a schedule II drug is the "amount equal to or exceeding twenty grams." R.C. 2925.01(D)(1)(d).

{¶ 26} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Furthermore, "[a] person has knowledge of circumstances when the person is aware that such circumstances probably exist." *Id.* "Knowledge can be ascertained from the surrounding facts and circumstances in the case." *State v Anderson*, 12th Dist. Fayette No. CA2008-07-026, 2009-Ohio-2521, ¶ 28, citing *State v. Lott*, 51 Ohio St.3d 160, 168 (1990).

{¶ 27} Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. *State v. Fultz*, 12th Dist. Butler No. CA2015-06-103, 2016-Ohio-1486, ¶ 12. Constructive possession exits when one is conscious of the presence of the object and able to exercise dominion and control over it, even if it is not within one's immediate physical possession. *State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 22. "Constructive possession may be proven by circumstantial evidence alone." *Fultz* at ¶ 12. Absent a defendant's admission, the surrounding facts and circumstances, including a defendant's actions, are evidence that a trier of fact may consider in determining whether the defendant had constructive possession. *Graves* at ¶ 22. "The discovery of readily accessible drugs in close proximity

to the accused constitutes circumstantial evidence that the accused was in constructive possession of the drugs." *Fultz* at ¶ 13.

{¶ 28} After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find that appellant's conviction for aggravated possession of drugs is supported by sufficient evidence and is not against the manifest weight of the evidence. The state presented testimony and evidence demonstrating that appellant knowingly possessed fentanyl in an amount that exceeded the bulk amount but was less than five times the bulk amount. Officer Taylor testified that a bag of 31.448 grams of fentanyl was discovered inside an open console near where a bag of marijuana had been sitting. The open console was within appellant's reach, as evidenced by the fact that appellant was able to easily grab the bag of marijuana in order to hand the bag over to Officer Taylor. Pursuant to Officer Taylor's testimony, the bag was also plainly visible to anyone in the vehicle. Therefore, as the bag of fentanyl was visible to appellant and was within close proximity to his reach, there was evidence to support the trial court's conclusion that appellant was conscious of the drugs and that he had the ability to exercise dominion and control over the drugs.

{¶ 29} Appellant's actions upon discovering Officer Taylor's presence at the apartment complex also demonstrates that appellant knowingly possessed the fentanyl. Officer Taylor testified that appellant took great effort to exit the Accord and to prevent his arrest. During appellant's struggle to avoid arrest, he broke free from Officer Taylor and attempted to dispose of a "computer mouse." This computer mouse was recovered by the police and found to be a digital scale that had fentanyl and cocaine residue on it. The trial court was entitled to consider appellant's behavior in concluding that appellant knew about the bag of fentanyl and was trying to dispose of evidence that would tend to show he

possessed it.

{¶ 30} Furthermore, in finding appellant guilty of aggravated possession of drugs, the trial court was entitled to reject appellant's defense that the drugs were his girlfriend's or belonged to the owner of the gray Accord. As the trial court noted, it was unlikely that appellant's girlfriend placed the fentanyl in the open console after appellant exited the car, as "[t]he woman was found with marijuana in her purse, which she received charges for. It seems unlikely that she would [have] hid[den] some, but not all, of her contraband during the scuffle." Furthermore, as for appellant's argument that the drugs belonged to the owner of the vehicle, this court has previously held that "[a] person may knowingly possess or control property belonging to another; the state need not establish ownership to prove constructive possession." *State v. Peyton*, 12th Dist. Butler No. CA2015-06-112, 2017-Ohio-243, ¶ 44.

{¶ 31} Accordingly, having examined the record in the foregoing case, we find that appellant's conviction for aggravated possession of drugs is supported by sufficient evidence and is not against the manifest weight of the evidence.

### Aggravated Trafficking in Drugs

{¶ 32} Appellant was also convicted of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2), which provides that "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or controlled substance analog is intended for sale or resale by the offender or another person." When the "amount of the drug involved equals or exceeds the bulk amount but is less than five times the bulk amount," aggravated trafficking in drugs is a felony of the third degree. R.C. 2925.03(C)(1)(c).

{¶ 33} As stated above, "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "A person has knowledge of circumstances when the person is aware that such circumstances probably exist." *Id.*

{¶ 34} "[C]ircumstantial evidence may be used to establish the offense of drug trafficking." *State v. Luna*, 12th Dist. Butler No. CA2008-04-115, 2009-Ohio-3421, ¶ 27. Furthermore, as we have previously recognized, "'plastic baggies, digital scales, and large sums of money are often used in drug trafficking [and such items] constitute circumstantial evidence that appellant was using these items to commit that crime.'" *State v. Trammell*, 12th Dist. Butler Nos. CA2016-11-220 thru CA2016-11-222, 2017-Ohio-8198, ¶ 48, quoting *State v. Harry*, 12th Dist. Butler No. CA2008-01-013, 2008-Ohio-6380, ¶ 50.

{¶ 35} The state presented evidence that appellant was knowingly transporting, delivering, or distributing fentanyl intended for sale or resale. Appellant possessed 31.448 grams of fentanyl, which the trial court found was an amount that "far exceed[ed] a supply for personal use." The drugs had been transported in the gray Accord into an apartment complex known for its high drug activity. Moreover, the drugs were found with a large pile of lottery cards, which Sargent Hirsch testified were commonly used as bindles to package drugs for sale. Appellant was also found in possession of a digital scale that had fentanyl on it and a large sum of cash, $647, which was found hidden in his sock. Considering these facts and circumstances, the trial court was entitled to find that appellant knowingly transported, delivered, or distributed fentanyl with knowledge that the drug was intended for sale or resale. Appellant's conviction for aggravated trafficking in drugs is therefore supported by sufficient evidence and is not against the manifest weight of the evidence. Appellant's first and second assignments of error are overruled.

{¶ 36} Assignment of Error No. 3:

{¶ 37} THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO CONSECUTIVE PRISON TERMS.

{¶ 38} In his third assignment of error, appellant argues the trial court erred when it ran his 30-month sentence in Case No. 2018-CR-00407 and his 30-month sentence in Case No. 2018-CR-00127 consecutively.

{¶ 39} An appellate court reviews an imposed sentence under the standard of review set forth in R.C. 2953.08(G)(2), which governs all felony sentences. *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1; *State v. Crawford,* 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 6. Pursuant to that statute, an appellate court does not review the sentencing court's decision for an abuse of discretion. *Marcum* at ¶ 10. Rather, R.C. 2953.08(G)(2) compels an appellate court to modify or vacate a sentence only if the appellate court finds by clear and convincing evidence (1) that the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant; or (2) that the sentence is otherwise contrary to law. *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 83; *Marcum* at ¶ 1.

{¶ 40} Pursuant to R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences. *State v. Smith,* 12th Dist. Clermont No. CA2014-07-054, 2015-Ohio-1093, ¶ 7. Specifically, the trial court must find that (1) the consecutive sentence is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4); *Smith* at ¶ 7. The trial court's R.C. 2929.14(C)(4) findings are required to be made at the sentencing hearing and incorporated into the court's sentencing entry. *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 37.

{¶ 41} Appellant concedes that the trial court made the necessary findings at the sentencing hearing and incorporated said findings in its entry when it stated as follows:

The court finds, to the extent that consecutive sentences are ordered in this entry, and for reasons stated on the record, that consecutive sentences are necessary to protect the public from future crime or to punish the defendant; that consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger that the defendant poses to the public; that the defendant committed each of the offenses while he was under post-release control for a prior offense; and that the defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the defendant.

Appellant contends, however, that the "resulting 60-month term of imprisonment was disproportionate and excessive when examined in conjunction with [his] conduct and the record does not support the sentencing court's findings under division (C)(4) of section R.C. 2929.14." We disagree and find that the record supports the consecutive sentencing findings made by the trial court.

- 14 -

{¶ 42} The presence-investigative report and the record from the sentencing hearing demonstrate appellant's lengthy criminal history, which started when he was a juvenile and continued into his adulthood. As a juvenile, appellant was adjudicated delinquent for multiple offenses, including grand theft, violating court orders, falsification, and possession of cocaine. After reaching adulthood, appellant was convicted of multiple misdemeanor and felony offenses, including public gaming, trafficking in cocaine, trafficking in heroin, unauthorized use of a vehicle, driving under suspension, carrying a concealed weapon, having weapons while under disability, receiving stolen property, obstructing official business, failing to comply with the order or signal of a police officer, and resisting arrest. Attempts to rehabilitate appellant have proven unsuccessful. He failed to complete court ordered programs at Talbert House and TASC. He violated terms of his community control and, while in prison, had numerous rule infractions, including infractions for violence-related behaviors. When appellant committed the offenses at issue in this appeal, he was on postrelease control following a 2015 felony conviction for having weapons while under disability. Appellant's lengthy criminal history demonstrated the danger he poses to the public and the need for consecutive sentences in order to protect the public from future crime and to punish his criminal behavior.

{¶ 43} Furthermore, the record supports the court's finding that consecutive sentences are not disproportionate to the seriousness of appellant's conduct or to the danger he poses to the public. Appellant was found in possession of drugs and a firearm, a dangerous combination. *See Smith v. United States*, 508 U.S. 223, 240, 113 S.Ct. 2050 (1993). He had 31.448 grams of fentanyl that he intended to traffic, which, as the trial court noted, was an amount so large that if appellant had been charged and sentenced under the current sentencing statutes, he would have faced a mandatory 11 year sentence for

trafficking in drugs as a first-degree felony offense. Appellant's efforts to resist arrest also demonstrate the seriousness of his conduct. Appellant engaged in a scuffle that stretched across the apartment complex's parking lot and necessitated the intervention of a second officer. Given appellant's actions, the trial court did not err in concluding that consecutive sentences were necessary and not disproportionate to the seriousness of his conduct or to the danger he posed to the public.

{¶ 44} Accordingly, as the record supports the findings made by the trial court under R.C. 2929.14(C)(4), we find that the court did not err in running the 30-month sentence in Case No. 2018-CR-00407 and the 30-month sentence in Case No. 2018-CR-00127 consecutive to one another. Appellant's third assignment of error is overruled.

{¶ 45} Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.