[Cite as *State v. Holley*, 2022-Ohio-4465.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

ROMONE DONNELL HOLLEY,

        Defendant-Appellant.

**CASE NO. 2022-L-022**

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2021 CR 000187

### O P I N I O N

Decided: December 12, 2022
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, *Kristi L. Winner* and *Laurence D. Giegerich*, Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Brian A. Smith*, Brian A. Smith Law Firm, LLC, 123 South Miller Road, Suite 250, Fairlawn, OH 44333 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Romone Donnell Holley, appeals from his convictions for Possession of a Fentanyl-Related Compound and Tampering with Evidence in the Lake County Court of Common Pleas. For the following reasons, we affirm the judgment of the lower court.

{¶2} On July 1, 2021, Holley was indicted by the Lake County Grand Jury for Possession of a Fentanyl-Related Compound (Count One), a felony of the fifth degree, in violation of R.C. 2925.11(A); Tampering with Evidence (Count Two), a felony of the third

degree, in violation of R.C. 2921.12(A)(1); Receiving Proceeds Subject to Forfeiture (Count Three), a felony of the fifth degree, in violation of R.C. 2927.21; and Possessing Criminal Tools (Count Four), a felony of the fifth degree, in violation of R.C. 2923.24(A).

{¶3} A jury trial was held on February 1 and 2, 2022. The following pertinent testimony and evidence were presented:

{¶4} On February 8, 2021, Lieutenant Zachary Ropos of the Lake County Sheriff's Office was traveling northbound on Chestnut Street and observed a vehicle drive over the center line multiple times. He subsequently observed the car turn without a signal and conducted a traffic stop. Ropos made contact with Holley, the driver and sole occupant of the vehicle. Before Ropos was able to advise Holley of the reason for the stop, Holley began stating that he "can't breathe" and explained that this was why he removed his seatbelt. Holley was sitting with his body "bladed," blocking the passenger seat and area between the seats from Ropos' view. Ropos then observed a substance he believed to be marijuana on the passenger's seat and requested that Holley exit the vehicle. Upon searching Holley's person, Ropos discovered $3,869 in one pocket and two cell phones in the other.

{¶5} Ropos placed Holley in his cruiser and conducted a search of the vehicle, leaving the phones in Holley's possession. He recovered the marijuana as well as a small bag with an off-white substance which he believed to be a narcotic. He described the baggie as being located "right next to the gear shifter of the vehicle" and also as "just in front of" the shifter. A photograph of the area near the shifter was presented, which he described as "where the small baggie of [white] powdered substance was located."

{¶6} When Ropos returned to his cruiser, he observed that one of the cell phones

2

was broken. He testified that when he had observed it during the prior search of Holley, it "still flipped open" and was in working order. Ropos inquired why Holley broke the phone. Holley responded that, if he were given a personal recognizance bond, Holley could "get a large load of that crack cocaine from Columbus. He then indicated that the number that he would need to call was on that cell phone." According to Ropos, Holley was "willing to offer his knowledge of narcotics to purchase drugs for the Lake County Sheriff's Office." Deputy Thomas McClurkin, who responded to the scene of the stop, also testified that he heard the statement about making a deal to buy narcotics.

{¶7}    Kimberly Gilson, a forensic analyst at the Lake County Crime Lab, tested the white substance located in Holley's vehicle and determined that it was a fentanyl-related compound.

{¶8}    The jury found Holley guilty of Counts One and Two and not guilty of Counts Three and Four. Following a sentencing hearing, the court sentenced Holley on the present matter as well as pending charges in two separate cases. It ordered that Holley serve a term of eleven months in prison for Count One and thirty months for Count Two, to be served concurrent with each other and with the other cases. This sentence was memorialized in a March 2, 2022 Judgment Entry.

{¶9}    Holley timely appeals and raises the following assignments of error:

{¶10}   "[1.]   Appellant's convictions were against the manifest weight of the evidence.

{¶11}   "[2.] Appellant's conviction for Tampering with Evidence was not supported by sufficient evidence.

3

Case No. 2022-L-022

{¶12} "[3.]  The trial court abused its discretion in denying Appellant's motion to dismiss his trial counsel and to represent himself, in violation of Appellant's right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."

{¶13}  We will consider the first and second assignments of error jointly since they deal with the interrelated issues of the weight and sufficiency of the evidence.  In his first assignment of error, Holley argues that the conviction for Possession of a Fentanyl-Related Compound is against the weight of the evidence because Ropos did not identify with sufficient specificity where the substance was found in relation to the gear shift to prove constructive possession.  As to Tampering with Evidence, he argues that the State did not demonstrate he acted with purpose to alter evidence since it was not shown the phone was broken while he was in the cruiser.

{¶14}  A challenge to the sufficiency of the evidence raises the issue of "whether the evidence is legally sufficient to support the jury verdict as a matter of law."  *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 165.  In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶15}  In contrast to sufficiency, "weight of the evidence addresses the evidence's effect of inducing belief."  (Citation omitted.)  *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25.  An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in

4

resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶16} In order to convict Holley of Possession of a Fentanyl-Related Compound, the State had to prove, beyond a reasonable doubt, that he did "knowingly * * * possess" such substance. R.C. 2925.11(A).

{¶17} Holley argues that the weight of the evidence did not demonstrate his possession of the drugs due to the failure to show exactly where they were located within the vehicle and that he was aware of their presence.

{¶18} Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).

{¶19} "Possession of drugs can be either actual or constructive." (Citation omitted.) *State v. Tackett*, 11th Dist. Ashtabula No. 2018-A-0052, 2019-Ohio-5188, ¶ 25. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." (Citation omitted.) *State v. Perry*, 11th Dist. Lake No. 2021-L-005, 2021-Ohio-2183, ¶ 27. "The discovery of readily accessible drugs in close proximity to the accused constitutes circumstantial evidence that the accused was in constructive possession of the drugs." (Citation omitted.) *State v. Mickey*, 12th Dist. Clermont Nos. CA2019-07-055 and CA2019-07-056, 2020-Ohio-1432, ¶ 27; *State v. Meddock*, 2017-Ohio-4414, 93 N.E.3d 43, ¶ 59 (4th Dist.).

{¶20} The finding that Holley was in possession of the drugs was supported by

5

the weight of the evidence. Ropos' testimony demonstrated that the baggie was discovered "right next to the gear shifter of the vehicle." Regardless of whether Ropos described in detail the precise location near the shifter where the drugs were discovered, there can be no dispute that the area described is in "close proximity" to the driver and is not hidden from view. The drugs were accessible to Holley by virtue of their location in that area. There were no other passengers present in the car such that it could be argued the drugs belonged to another, which also undercuts an argument that Holley was unaware of the drugs.

{¶21} The State observes that exhibit 5B, a photograph taken inside of the car, shows clear plastic which looks like a baggie directly in front of the gear shifter. While it is difficult to determine in the picture whether this contains drugs, it appears from this picture combined with the testimony that it is the location of the drugs. While Holley argues that the record is unclear whether the drugs were in that picture, even if it does not, the testimony alone establishes their location. Other facts also supported Holley's knowledge and possession of the drugs in the car, such as the fact that he moved his body in a way to block Ropos' view inside the car and subsequent statements about being able to obtain drugs as an informant. Under these circumstances, we do not find the conviction to be against the weight of the evidence. *See State v. Morales*, 5th Dist. Licking No. 2004 CA 68, 2005-Ohio-4714, ¶ 51 (possession conviction was supported by the weight of the evidence when drugs were found in the console around the gear shift in a car driven by the appellant); *State v. Dorsey*, 10th Dist. Franklin No. 04AP-737, 2005-Ohio-2334, ¶ 33, 38 (where a gun was in close proximity to the gear shift, the appellant had the ability to "easily exercise dominion and control" over it and a finding of

6

constructive possession was supported by the weight of the evidence).

{¶22} Holley also argues that his conviction for Tampering with Evidence is against both the weight and sufficiency of the evidence.

{¶23} To convict Holley of Tampering with Evidence, the State was required to prove, beyond a reasonable doubt, that he did, "knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." R.C. 2921.12(A)(1).

{¶24} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). "Under R.C. 2921.12(A)(1), the court does not impute constructive knowledge on the defendant." *State v. Camacho*, 11th Dist. Lake No. 2021-L-054, 2021-Ohio-3975, ¶ 24, citing *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248, ¶ 24. "Rather, the defendant must be subjectively aware that his conduct will probably cause a certain result or that circumstances probably exist." *Id.*

{¶25} Ropos testified that he initially removed the phone from Holley's pocket before placing him in the cruiser, flipped it open, and did not observe it to be broken at that time. He placed Holley in the cruiser with the phone still in Holley's possession. When Ropos returned, the phone was broken in half. This, coupled with Holley's statement that he could call a contact to obtain drugs and the drugs found in his vehicle, supported a conclusion that he broke the phone to destroy or conceal evidence related

7

to potential drug deals or drug-related charges. Destruction of a cell phone to avoid its use in an investigation supports a conviction for Tampering with Evidence. *State v. Queen*, 3d Dist. Hardin No. 6-20-13, 2021-Ohio-1131, ¶ 46. Holley's statements show he was aware he would face charges for the drug possession and the fact that he had been removed from the car, patted down, and placed in a cruiser demonstrated that an investigation was ongoing. As this court observed in *Camacho*, circumstantial evidence can be used to prove that an investigation was likely to be instituted and it is reasonable to infer a defendant's subjective knowledge of a likely investigation when a crime has been committed. *Id.* at ¶ 25-26.

{¶26} Holley argues that the State cannot prove the phone was not already damaged when Holley was placed in the cruiser. Ropos, however, testified that when he first observed the cell phone, it was functioning, flipped open, and was "intact." When he observed it minutes later, it was "broken in half." Ropos' testimony supported a finding that the phone had been broken. While it may have functioned, Holley still altered and caused damage to the phone. His lack of success in rendering it completely nonfunctional does not mean he did not intend to or have a purpose to destroy it.

{¶27} Holley argues that there was no video from the cruiser presented to show how the damage occurred and the State cannot prove what caused the damage. We will not speculate as to whether such video existed or why it was not introduced. Based on the facts presented, the jury could reasonably conclude that Holley, who was alone in the cruiser, caused the damage as cell phones generally do not snap in half while an individual is sitting in a vehicle.

{¶28} The first and second assignments of error are without merit.

Case No. 2022-L-022

{¶29} In his third assignment of error, Holley argues that the trial court erred in denying his motion to represent himself and dismiss counsel, which was supported by his claims that counsel failed to ask questions he requested on cross-examination and failed to communicate with him about his case. He emphasizes that allowing him to represent himself following the close of the State's case would have caused minimal disruption of the trial and would not have raised any concerns with the court's schedule.

{¶30} "[T]he right to counsel of one's choice is an essential element of the Sixth Amendment right to have the assistance of counsel for one's defense." (Citation omitted.) *State v. Howard*, 11th Dist. Lake No. 2019-L-153, 2020-Ohio-5057, ¶ 27. However, "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). A defendant with court-appointed counsel may discharge such counsel if he can "show a breakdown in the attorney-client relationship of such a magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988), paragraph four of the syllabus.

{¶31} Courts have "wide latitude in balancing the right to counsel of choice against the needs of fairness * * * and against the demands of its calendar." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). In particular, "trial courts continue to have the authority to limit a defendant's right to counsel of choice when faced with a belated request to change attorneys." *State v. Daniels*, 11th Dist. Trumbull No. 2019-T-0079, 2019-Ohio-5314, ¶ 15.

Case No. 2022-L-022

{¶32} As to Holley's request to represent himself, the Sixth Amendment guarantees that "a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus. However, "[w]here the right to self-representation is invoked after the commencement of trial, 'the denial of the right is reviewed under the abuse of discretion standard.'" *State v. March-Natali*, 11th Dist. Trumbull No. 2022-T-0022, 2022-Ohio-4061, ¶ 15, citing *State v. Struble*, 11th Dist. Lake No. 2016-L-108, 2017-Ohio-9326, ¶ 35.

{¶33} After the State rested, Holley indicated to the court that he had not had meetings with his lawyer to review his case and he did not know anything about the case, which he characterized as "ineffective appropriate counsel." He indicated that he was given a police report one day prior to trial and that defense counsel did not ask questions he requested. Holley asked that he be given additional time to "go over" his case and then stated: "I don't want to proceed with this." Defense counsel indicated that the prior day, she had discussed with Holley a potential desire to represent himself but after further discussion, he retracted those comments. The court determined that defense counsel provided competent representation and would remain as his counsel. It considered pro-se motions Holley had attempted to file relating to dismissal of the charges and jurisdiction and determined that Holley had made unlawful arguments, had an inability to follow rules of procedure and evidence, and would not be competent to represent himself. The matter proceeded to closing arguments.

{¶34} Holley did not express to the court the desire to represent himself until the

10

middle of the trial after the State rested. At that point, all cross-examination of the State's witnesses was completed and there was no additional evidence to be presented. The court considered the positions of both sides and was able to view the actions of defense counsel and her litigation of the case. Defense counsel represented that she had discussed the case with her client. The court allowed Holley to state on the record questions he believed counsel should have asked and determined such questions lacked merit or would not be proper on procedural grounds. Further, courts have consistently upheld denial of similar requests made at a late stage in proceedings, noting their use as a delaying tactic. *See State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, at ¶ 41 (defendant was represented by counsel for ten months and did not ask to discharge counsel and proceed alone until he sought a "last-minute" continuance and thus, his request to represent himself was sought to delay trial); *State v. Kramer*, 3d Dist. Defiance No. 4-15-14, 2016-Ohio-2984, ¶ 13 ("Kramer's self-representation request—which was made on the second day of trial—was untimely"). In the present matter, we find no abuse of discretion in rejecting Holley's request and proceeding to the conclusion of the trial.

{¶35} While Holley argues that allowing him to represent himself at this stage would cause "minimal disruption," it is evident the court had concerns that he would be unable to follow the procedural rules necessary to carry through with the trial and it would likely also cause confusion to the jurors. The court was permitted to weigh the amount of disruption, potential delay, and whether the request was a delaying tactic in determining whether to allow Holley to dismiss counsel and represent himself and its exercise of discretion was not improper.

11

{¶36} The third assignment of error is without merit.

{¶37} For the foregoing reasons, Holley's convictions for Possession of a Fentanyl-Related Compound and Tampering with Evidence are affirmed. Costs to be taxed against appellant.

JOHN J. EKLUND, P.J.,

FREDERICK D. NELSON, J., Ret., Tenth Appellate District, sitting by assignment,

concur.

Case No. 2022-L-022