[Cite as *State v. Johnson*, 2016-Ohio-8286.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27813 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| REGINALD JOHNSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2014 09 2876 |

DECISION AND JOURNAL ENTRY

Dated: December 21, 2016

WHITMORE, Judge.

{¶1} Appellant, Reginald Johnson, appeals from the April 23, 2015 judgment of the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} This matter arises from an incident that took place at Alex's Bar and Grill ("Alex's Bar") on South Arlington Street in Akron, Ohio. In the early morning hours of August 1, 2014, W.R., D.M., and C.P. were allegedly stabbed during a bar fight between Mr. Johnson and an unknown female member of the Zulu motorcycle gang.

{¶3} Mr. Johnson was indicted on three counts of felonious assault, in violation of R.C. 2903.11(A)(2), all felonies of the second degree.

{¶4} Mr. Johnson pleaded not guilty and a jury trial commenced.

{¶5} D.M., W.R., Barbara Wells, Detective John Ross, C.P., Detective Michael Fox, Standaisha Glover, and Detective Steven Mara testified on behalf of the State. Mr. Johnson did not call any witnesses to testify on his behalf.

{¶6} The jury found Mr. Johnson guilty of count one, felonious assault as to W.R. and not guilty of count two, felonious assault as to D.M. The jury was deadlocked as to count three, whether Mr. Johnson committed felonious assault against C.P.

{¶7} At sentencing, the State dismissed count three as to C.P. and the trial court sentenced Mr. Johnson to five years imprisonment for feloniously assaulting W.R.

{¶8} Mr. Johnson appeals, raising five assignments of error.

II

### Assignment of Error Number One

THE TRIAL COURT ERRED WHEN IT ALLOWED AN IN-COURT IDENTIFICATION OF [MR.] JOHNSON UNDER IMPERMISSIBLY SUGGESTIVE CIRCUMSTANCES, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 5TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶9} In his first assignment of error, Mr. Johnson argues that the trial court erred when it allowed Ms. Glover to make an in-court identification of Mr. Johnson under "impermissibly suggestive circumstances." Specifically, Mr. Johnson argues that Ms. Glover's identification of him "was suspect, made under circumstances suggestive of [Mr. Johnson's] guilt, and unfairly prejudicial." Mr. Johnson contends that "[o]nly after [an] out-of-court discussion with the [assistant] prosecutor and detective could [Ms. Glover] identify him [as the assailant]." Mr. Johnson also states that his "[trial] [c]ounsel objected to the State re-calling [Ms. Glover] to testify."

{¶10} In response, the State argues that, while Mr. Johnson objected to the State re-calling Ms. Glover as a witness, Mr. Johnson "did not articulate an objection based on 'suggestive circumstances' and, therefore, has waived this argument on appeal."

{¶11} To preserve an alleged error for appeal, a party must timely object and state the specific grounds for the objection. *See State v. Dudukovich,* 9th Dist. Lorain No. 05CA008729, 2006-Ohio-1309, ¶ 24. A failure to do so results in a forfeiture of the objection and limits any claim of error on appeal to "[p]lain errors or defects affecting substantial rights." (Alteration sic.) *State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 15, quoting Crim.R. 52(B).

{¶12} Here, the record indicates that prior to re-calling Ms. Glover, the following discussion occurred among the State, defense counsel, and the trial court:

> [the State]:  We would be asking to re[-]call [Ms. Glover] as a witness, Your Honor.  And our case is still open.  We have yet to rest.
>
> [defense counsel]:  And I would just object to that.
>
> [the court]:  All right.  Your objection is noted, but the State is still presenting its case, and, in fact, hasn't called another witness, so I'll just allow [the State] to re[-]call [Ms. Glover].

Then, at the close of evidence, the following discussion occurred regarding the State's re-calling of Ms. Glover:

> [defense counsel]: Your Honor, one other thing just for a clear record. * * * [Ms.] Glover testified, and, Your Honor, you don't allow us to do speaking objections, and without the jury here I would just like to formalize an oral objection if you don't mind.  When [Ms.] Glover was * * * testifying she stated that she did not see the person here today that committed this offense.
>
> [the court]:  * * * I don't know that she said an affirmative no.  She just said I can't identify the person. * * * I think that's what I recall.
>
> [defense counsel]:  Your Honor, you could be correct.  I somehow thought she did say no, but you could be correct. But she was up there for a period of time.  I'm not sure how long, perhaps ten minutes, perhaps 20 minutes, I don't know. * * *

[the court]: [The] State redirected her probably briefly and then she was done and * * * she left the courtroom.

[defense counsel]: Yes, Your Honor. And so she walked out with the [assistant] prosecutor, and * * * there was a detective in the back that she mentioned that brought her here. He went out as well. They weren't out very long; it was a few moments. * * *

[the court]: I'm guessing less than a minute.

[defense counsel]: I'm not sure, Your Honor. Then they came back in and the State asked if they could re[-]call [Ms. Glover] because it was indicated that now she could ID Mr. Johnson. And I just wanted to formalize my objection, and for those reasons why, * * * I just wanted to make a record of that.

[the court]: All right. Well, you did object at the time on the record. * * * And the [c]ourt indicated that generally speaking, when the party is still presenting their case, in other words, the State was still in the middle of presenting its case, [the State] hadn't rested, they were preparing to call another witness after [Ms. Glover], if for good cause shown they have the ability to re[-]call a witness, that's not precluded. And so the [c]ourt permitted [the State] to do that.

* * *

{¶13} Here, Mr. Johnson objected at the time the State re-called Ms. Glover as a witness, and then made a more specific objection at the close of evidence. However, nowhere in his second objection does Mr. Johnson claim (1) that the in-court identification was flawed due to "impermissibly suggestive circumstances," or (2) that the in-court identification was "unfairly prejudicial." In fact, Mr. Johnson had ample opportunity to raise these issues with the trial court when he stated that Ms. Glover originally left the courtroom, for "a few moments," with the assistant prosecutor and detective.

{¶14} The record clearly indicates that, at the close of evidence, the discussion between Mr. Johnson's counsel and the trial court focused upon the State's ability to re-call Ms. Glover as a witness, and not whether the assistant prosecutor and/or detective prompted Ms. Glover to change her prior testimony regarding Mr. Johnson's in-court identification. As such, because Mr. Johnson did not preserve this issue for appeal, we decline to address the merits of his

argument. Further, because Mr. Johnson failed to argue plain error, this Court will not construct a plain error argument on his behalf. *See State v. Hairston,* 9th Dist. Lorain No. 05CA008768, 2006-Ohio-4925, ¶ 11, citing App.R. 16(A)(7); *see also State v. Rowland*, 9th Dist. Medina No. 07CA0085-M, 2008-Ohio-3213, ¶ 7. Therefore, we decline to address Mr. Johnson's argument that the trial court erred by allowing an in-court identification under "impermissibly suggestive circumstances."

{¶15} Mr. Johnson's first assignment of error is overruled.

Assignment of Error Number Two

[MR.] JOHNSON WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED UNDER THE SIXTH AMENDMENT TO THE U.S. CONSTITUION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶16} In his second assignment of error, Mr. Johnson argues that his counsel was ineffective for failing to subpoena Officer Urdiales prior to trial. Specifically, Mr. Johnson contends that Officer Urdiales' testimony would have supported his defense.

{¶17} In response, the State argues that counsel's performance was not deficient because, as explained on the record, counsel had no reason to subpoena Officer Urdiales prior to trial when it was the testimony at trial "that caused counsel to feel that [O]fficer [Urdiales] might be helpful in bolstering [Mr. Johnson's] theory of the case.

{¶18} This Court must analyze claims of ineffective assistance of counsel under a standard of objective reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989). Under this standard, a defendant must show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" *Strickland* at 687. A

defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different. *Id.* at 694. In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. This Court need not address both prongs of *Strickland* where an appellant fails to prove either prong. *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10.

{¶19} In the present matter, defense counsel explained his trial strategy as follows:

\* \* \*

We did subpoena Officer Urdiales[.] \* \* \*

We did not subpoena him until the morning [the subpoena] was delivered to the chief's desk.

What happened was after the conclusion of the State's case \* \* \* I felt it prudent to subpoena [Officer Urdiales] and we didn't get done here until after 4:00 [p.m.].

I went and got a green subpoena so that we could provide that. We called over and we were informed by the Akron Police Department that they would not accept a subpoena or attempt to serve that subpoena on their officer. It was less than 24 hours in advance, and we were clearly outside of that window.

*Again, we are only doing that because of the testimony that came out [at trial].* Officer Urdiales was on the State's witness list and so it's not an undue surprise to them.

And then also I do believe that there were other officers that were not subpoenaed that were used by the State or they were subpoenaed in less than 24 hours as well. So we did seek to call [Officer Urdiales].
\* \* \*
(Emphasis added.)

{¶20} "The mere failure to subpoena witnesses is not a substantial violation of an essential duty to a client in the absence of [a] showing that [the] testimony \* \* \* would have assisted the defense." *State v. Wallace,* 9th Dist. Lorain No. 06CA008889, 2006-Ohio-5819, ¶ 18, quoting *Middletown v. Allen,* 63 Ohio App.3d 443, 448 (12th Dist.1989). "However, the

failure to subpoena a known alibi witness is a violation of the right to effective assistance of counsel." *Wallace* at ¶ 18. Further, "[t]he failure to subpoena witnesses is not prejudicial if the testimony of those witnesses simply would have been corroborative." *Middletown* at 448.

{¶21} Here, based upon a police report, Mr. Johnson's counsel proffered what he believed would have been Officer Urdiales' testimony: (1) Mr. Johnson was handcuffed and patted down, but no weapon was found; (2) Mr. Johnson had a shirt on, and his son did not have a shirt on; (3) while Mr. Johnson was detained, a "BOLO" went out for the suspects that included a clothing description, and that the suspects "possibly left in a white vehicle;" and (4) both Mr. Johnson and his son were released from custody.

{¶22} Although Officer Urdiales' proffered testimony may have partially corroborated Mr. Johnson's theory of the case, it did not offer Mr. Johnson an alibi at the time of the incident. *See Wallace* at ¶ 18. Additionally, we have no way of knowing the full extent of Officer Urdiales' testimony, and whether any of it would have been damaging to Mr. Johnson. Further, other witnesses testified that: (1) no weapons were found during the investigation; (2) Mr. Johnson was wearing a shirt; and (3) Mr. Johnson was initially released from custody. As such, Mr. Johnson's assertions do not overcome the presumption of competent counsel. Nor do they demonstrate prejudice by showing that, but for defense counsel's failure to subpoena Officer Urdiales, there is a reasonable probability that the outcome of trial would be different. *See Strickland*, 466 U.S. at 694.

{¶23} Mr. Johnson's second assignment of error is overruled.

<u>Assignment of Error Number Three</u>

THE TRIAL COURT ERRED WHEN IT OVERRULED [MR.] JOHNSON'S REQUEST FOR A SELF-DEFENSE JURY INSTRUCTION, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 5TH AND 14TH AMENDMENTS

TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

**{¶24}** In his third assignment of error, Mr. Johnson argues that the trial court erred when it overruled his request for a self-defense jury instruction. Specifically, Mr. Johnson contends that the trial court denied his request "because [he] had not testified about his subjective belief of being in danger."

**{¶25}** Crim.R. 30(A) provides:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. * * * On appeal, a party may not assign as error the * * * failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection.

**{¶26}** "Generally, a request for a special jury instruction must be made in writing." *State v. Yates,* 9th Dist. Summit No. 21239, 2003-Ohio-2956, ¶ 18, citing *State v. Franklin,* 62 Ohio St.3d 118, 128 (1991). "Further, a party objecting to the trial court's failure to give such an instruction must object before the jury retires." *Id.* "A party's failure to object ordinarily constitutes waiver, absent plain error." *Id.* *See also* Crim.R. 52(B). "However, the Supreme Court of Ohio has created an exception, such that a party does not waive his objections to the trial court's refusal to include the proposed jury instruction by failing to formally object." *Yates* at ¶ 18, citing *State v. Wolons*, 44 Ohio St.3d 64 (1989), paragraph one of the syllabus. "The exception is applicable '(1) where the record affirmatively shows that a trial court has been fully apprised of the correct law governing a material issue in dispute, and (2) the requesting party has been unsuccessful in obtaining the inclusion of that law in the trial court's charge to the jury.'" *Id.*, quoting *Wolons* at paragraph one of the syllabus.

**{¶27}** Here, the record indicates that Mr. Johnson requested a jury instruction regarding self-defense, and the State opposed this request. Upon the trial court's refusal to give the self-defense instruction, Mr. Johnson failed to object to the instructions as submitted to the jury. Additionally, the record does not contain Mr. Johnson's proposed instructions regarding self-defense. This Court's review is limited to the record before us. *See* App.R. 9; *see also* App.R. 12(A)(1)(b). App.R. 9 places an affirmative duty on Mr. Johnson to provide us with an adequate record, or the portions necessary for review on appeal. *See also* App.R. 10(A), *see also Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 19 (1988). "A presumption of validity attends the trial court's action. In the absence of an adequate record, * * * we are unable to evaluate the merits of the assignments of error and must affirm the trial court's decision." *Volodkevich v. Volodkevich*, 48 Ohio App.3d 313, 314 (9th Dist.1989). *See also Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980).

**{¶28}** As such, because Mr. Johnson failed to include the proposed jury instructions in the record, we cannot conclude that the trial court erred in refusing his request for a jury instruction on self-defense. *See Yates* at ¶ 19; *see also State v. Palmison,* 9th Dist. Summit No. 20854, 2002-Ohio-2900*,* ¶ 39.

**{¶29}** Mr. Johnson's third assignment of error is overruled.

Assignment of Error Number Four

[MR.] JOHNSON'S CONVICTION FOR FELONIOUS ASSAULT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 5TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

**{¶30}** In his fourth assignment of error, Mr. Johnson argues that his conviction for felonious assault was not supported by sufficient evidence. Specifically, Mr. Johnson asserts that

the State did not present sufficient evidence that he "knowingly caused or attempted to cause harm with a deadly weapon."

{¶31} "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. When reviewing a conviction for sufficiency, evidence must be viewed in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The pertinent question is whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at 386, citing *State v. Robinson*, 162 Ohio St. 486 (1955). This Court, therefore, reviews questions of sufficiency de novo. *State v. Salupo*, 177 Ohio App.3d 354, 2008-Ohio-3721, ¶ 4 (9th Dist.).

{¶32} R.C. 2903.11(A)(2) provides, in relevant part, that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." According to R.C. 2901.22(B):

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist.

{¶33} Here, W.R. testified that he was at Alex's Bar at the time of the stabbing, and that his girlfriend, Ms. Wells, owns and operates the bar. W.R. indicated that, on the date in question, he heard Mr. Johnson say, "[l]et me get a drink from that Zulu bitch." He then saw Mr. Johnson "arguing with a female," who subsequently "sucker punched" Mr. Johnson. As the

situation escalated, W.R. became involved and told "the female," "I'll take care of it," "[l]et me handle it." However, the female then attempted to hit Mr. Johnson, first with a beer bottle, and, then, with a liquor bottle from behind the bar. W.R. testified that, while "trying to * * * diffuse the situation," he "got stabbed." From a photo array of six individuals, W.R. identified Mr. Johnson with "100 percent" certainty as the person who stabbed him.

{¶34} Ms. Wells, the owner and operator of Alex's Bar, testified that she saw Mr. Johnson with a knife on the date of the incident. Further, Ms. Wells stated that she saw W.R.'s stab wounds on that same date. From a photo array of six individuals, Ms. Wells also identified Mr. Johnson as the person who stabbed W.R.

{¶35} Detective Ross testified that he administered the photo arrays to both W.R. and Ms. Wells. According to Detective Ross, W.R. identified Mr. Johnson as the person who stabbed him with "100 percent" certainty, and Ms. Wells also identified Mr. Johnson, first with one "100 percent" certainty, and then with "200 percent" certainty. Detective Ross further testified that, during the administration of the photo array, W.R. stated "[Mr. Johnson] stabbed me."

{¶36} Viewing the evidence in a light most favorable to the State, there is sufficient evidence to support a finding that Mr. Johnson knowingly caused physical harm to W.R. with a knife: (1) Both W.R. and Ms. Wells identified Mr. Johnson as W.R.'s assailant through the photo array; (2) Ms. Wells testified that she saw Mr. Johnson with a knife during the incident at her bar; (3) W.R. testified that he "got stabbed" while trying to diffuse a situation between Mr. Johnson and a female at the bar; (4) Detective Ross testified that W.R. identified Mr. Johnson with 100 percent certainty, and Ms. Wells identified Mr. Johnson with 200 percent certainty; and (5) Detective Ross testified that W.R. told him that Mr. Johnson stabbed him. Based upon these

facts, a rational trier of fact could have found the essential elements of felonious assault proven beyond a reasonable doubt. *See Jenks,* 61 Ohio St.3d at paragraph two of the syllabus.

{¶37} Mr. Johnson's fourth assignment of error is overruled.

### Assignment of Error Number Five

[MR.] JOHNSON'S CONVICTION FOR FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 5TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶38} In his fifth assignment of error, Mr. Johnson argues that the State failed to provide credible evidence that Mr. Johnson knowingly caused physical harm to W.R. Specifically, Mr. Johnson argues that, after initially being unable to identify him in court, Ms. Glover "was the only witness to testify that [Mr. Johnson] was the aggressor * * *."

{¶39} In determining whether a conviction is against the manifest weight of the evidence an appellate court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶40} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than it supports the other. *Thompkins*, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court. *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19

(1988). Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *see also Otten* at 340.

{¶41} Here, W.R. testified that the altercation began *after* Mr. Johnson stated, "[l]et me get a drink from that Zulu bitch." W.R. indicated that Mr. Johnson "disrespected" the female by "call[ing] her out of her name," and "[t]hat's where it started from." Further, W.R. described the scene at Alex's Bar as a "commotion," with "so much activity going on." When W.R. attempted to diffuse the situation, Mr. Johnson stabbed him in the arm.

{¶42} Ms. Wells also described the atmosphere in the bar as being a "commotion," and stated that there could have been 50 people there at the time. Ms. Wells testified that she saw W.R. "trying to break up the fight" between Mr. Johnson and the female, and that Mr. Johnson had a knife.

{¶43} Ms. Glover testified that she was at Alex's Bar at the time of the incident. Ms. Glover testified that: (1) Mr. Johnson touched her and another woman's buttocks and stated, "B, I can buy both of you all;" (2) Mr. Johnson "put some money on the table;" and (3) Mr. Johnson punched her in the face, as well as punching the other woman. Ms. Glover also testified that she saw something in Mr. Johnson's hand that she could not identify, and that Mr. Johnson stabbed C.P. during the altercation. Originally, Ms. Glover could not make an in-court identification of Mr. Johnson. However, after walking past him while exiting the courtroom, she was able to re-take the stand and identify Mr. Johnson as the assailant.

{¶44} The jury heard all of the testimony, including that Ms. Glover could not identify Mr. Johnson as the perpetrator when she first took the witness stand. Further, the jury heard testimony regarding: (1) the atmosphere in the bar; (2) that Mr. Johnson disrespected a female

bar patron by calling her a "Zulu bitch," which started the fight; (3) that Mr. Johnson had a knife; and (4) that several people were stabbed during this altercation. After hearing the evidence, the jury chose to believe that Mr. Johnson had a knife and that he knowingly used that knife to stab W.R. in the arm. Pursuant to the definition of "knowingly" in R.C. 2901.22(B), it does not matter whether Mr. Johnson intended to stab W.R. The fact that Mr. Johnson wielded a knife during a bar fight, where several people were throwing punches, should have made him aware that someone would probably be stabbed. Further, "[c]redibility determinations are primarily within the province of the trier of fact[,]" who is "'free to believe all, part, or none of the testimony of each witness.'" *State v. Just,* 9th Dist. Wayne No. 12CA0002, 2012-Ohio-4094, ¶ 42; *State v. Cross,* 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 35, quoting *Prince v. Jordan,* 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. Having reviewed the record, we cannot conclude that the jury clearly lost its way or created a "manifest miscarriage of justice." *Otten,* 33 Ohio App.3d at 340.

**{¶45}** Mr. Johnson's fifth assignment of error is overruled.

## III

**{¶46}** Mr. Johnson's five assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

BETH WHITMORE
FOR THE COURT

SCHAFER, J.
CONCURS.

MOORE, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶47} With respect to Mr. Johnson's challenge to the weight of the evidence, I note that the witnesses for the State were less than clear as to whether they saw Mr. Johnson stab W.R. or whether they deduced after the incident that Mr. Johnson must have stabbed W.R. Nonetheless, given the circumstantial evidence present in this case, I agree with the majority that this is not the case where the jury clearly lost its way and created a manifest miscarriage of justice in finding Mr. Johnson guilty of felonious assault against W.R. Accordingly, I concur in the judgment.

APPEARANCES:

JEREMY A. VEILLETTE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.