[Cite as *State v. Heald*, 2022-Ohio-2282.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

       Plaintiff-Appellee,

- v -

MARCUS E. HEALD,

       Defendant-Appellant.

**CASE NOS. 2021-L-111**
**2021-L-112**

Criminal Appeal from the
Painesville Municipal Court

Trial Court Nos. 2021 CRB 01024 A
                 2021 CRB 01024 B

# O P I N I O N

Decided: June 30, 2022
Judgment: Affirmed

*Joseph Hada*, Madison Township Prosecutor, 1392 SOM Center Road, Mayfield Heights, OH 44124 (For Plaintiff-Appellee).

*Cory R. Hinton*, Hanahan & Hinton, LLC, 8570 Mentor Avenue, Mentor, OH 44060 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Marcus E. Heald, appeals his conviction for Assault following a bench trial in the Painesville Municipal Court. For the following reasons, Heald's conviction is affirmed.

{¶2} On June 15, 2021, a Complaint was filed in the Painesville Municipal Court charging Heald with Assault, a misdemeanor of the first degree in violation of R.C. 2903.13(A), and Disorderly Conduct, a minor misdemeanor in violation of R.C. 2917.11(A)(1).

{¶3} On September 27, 2021, a bench trial was held. The following witnesses

gave testimony on behalf of the State:

{¶4} Jason Hughes, a police officer with the Painesville Police Department, testified that, on May 16, 2021, at approximately 11:48 p.m., he was dispatched to the area of Homeworth Avenue and North State Street in response to a report of a fight or altercation in progress. At the scene, Hughes spoke with a Sheri Thompson who claimed that she had been struck in the side of her face. Hughes noted that there "appeared to be some slight bruising on her cheek."

{¶5} Thompson testified that she lived on Shelby Avenue in close proximity to Heald and his girlfriend, Crystal Scheibelhoffer, on Homeworth Avenue. On the date in question, Thompson confronted Scheibelhoffer outside of her residence regarding, inter alia, her use of racial slurs. Scheibelhoffer went inside the apartment, but the door remained open. According to Thompson: "I am standing on the porch. Out of nowhere, [Heald] comes running up on the porch, gets in my face and says, 'You in my area now, b***ch,' and punched me in my face."

{¶6} Nickole Doss testified that, on the date in question, she was inside her residence on Homeworth Avenue when she heard a loud ruckus outside. From her window, she observed a group of people yelling and arguing. She noted a Caucasian lady[1] back inside an apartment while an African-American lady followed her onto the porch telling her to come outside. At this point, a Caucasian male "ran up behind the black lady that was standing at the door and reached to grab her." Doss then heard an African-American male tell the Caucasian male "not to put his hands on his girl." Doss could not confirm whether the Caucasian male made contact with the African-American

---

1. Doss either did not, or could not, identify any of the persons she witnessed during the incident.

Case No. 2021-L-111

female. She "just saw his hands go towards her * * * just saw him going towards her with his hands outreached." Doss recorded some of the incident with her phone which recording was played for the court.

{¶7} At the close of the State's case, Heald moved for acquittal pursuant to Criminal Rule 29(A). The municipal court denied the motion "based upon the testimony of Ms. Thompson, who said that she was struck on the left cheek."

{¶8} Based on the foregoing testimony, the municipal court found Heald guilty of Assault and Disorderly Conduct and merged the Disorderly Conduct charge for purposes of sentencing. The court sentenced Heald to serve 180 days in the Lake County Jail, placed him on community control for 12 months, and ordered him to pay a fine of $150. The court suspended 150 days of the jail sentence on condition that Heald abides by the terms of his Community Control. Heald's sentence was stayed pending appeal.

{¶9} On October 21, 2021, Heald filed a Notice of Appeal. On appeal, he raises the following assignments of error:

> [1.] The Court's finding of guilt and Heald's subsequent conviction for assault is contrary to the manifest weight of the evidence; therefore, Heald's conviction for said count should be overturned, and Heald should be remanded to the trial court for a new trial.
>
> [2.] The Court's admission of hearsay as to prove an element of the offenses at hand should be overturned, and Heald should be remanded to the trial court for a new trial.
>
> [3.] Heald's trial counsel was ineffective in failing to call any witnesses in Heald's defense.
>
> [4.] The Court's denial of Defendant's Rule 29 Motion should be overturned, and Heald should be remanded to the trial court for a new trial.

3

{¶10} The assignments of error will be addressed out of order.

{¶11} In the second assignment of error, Heald argues that the municipal court erred by permitting Officer Hughes to offer hearsay testimony, after proper objection, on essential elements of the charges against him.

{¶12} "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). A trial court "does not have the discretion to admit evidence that is clearly not permitted by law * * * such as whether testimony constitutes hearsay." *State v. Davis*, 11th Dist. Lake No. 2019-L-170, 2021-Ohio-237, ¶ 133. In such cases, the lower court's evidentiary ruling is reviewed de novo. *Id.*

{¶13} In a bench trial where the court is the trier of fact, it is presumed "that the judge disregards improper hearsay evidence unless there is affirmative evidence in the record to the contrary." (Citation omitted.) *State v. Wuensch*, 2017-Ohio-9272, 102 N.E.3d 1089, ¶ 36 (8th Dist.); *State v. Schultz*, 11th Dist. Lake No. 2003-L-156, 2005-Ohio-345, ¶ 37, citing *Columbus v. Guthmann*, 175 Ohio St. 282, 194 N.E.2d 143 (1963), paragraph three of the syllabus ("[i]n the absence of some showing to the contrary, there is a presumption that a trial judge performed his duty and did not rely upon anything in reaching his decision that he should not have relied upon").

{¶14} Here, Officer Hughes described videos of the incident shown to him at the scene in which Heald "was using all sorts of obscene language" and "racial slurs." Hughes also testified that "Ms. Thompson stated that she was on the porch of [the apartment on] Homeworth and that's where she was having -- and based on the statement

4

given by Ms. Doss -- she was having a verbal argument or an exchange with Crystal Scheibelhoffer." At this point, counsel for Heald objected to the testimony noting that the witness was available to testify. The municipal court overruled the objection: "It's a trial to the Court, so the Court understands the rules of evidence there."

{¶15} We find no error. There is no evidence in the record to rebut the presumption that the municipal court "considered only the relevant, material, and competent evidence in arriving at its judgment." *State v. White*, 15 Ohio St.2d 146, 151, 239 N.E.2d 65 (1968). On the contrary, the court acknowledged that it understood the rules of evidence and, when ruling on Heald's motion for acquittal, only cited to the testimony of Thompson given in court. Additional considerations also weigh against a finding of error. The statements attributed to Heald were admissible inasmuch as a defendant's own out-of-court statements are not generally considered hearsay when offered against him at trial. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 112, citing Evid.R. 801(D)(2)(a). The statements by Thompson and Doss were not material to the charges, but only provided context or background to, in the court's words, "the alleged altercation that led to the charge of the assault." Arguably, the statements would not be hearsay at all if taken as explaining Officer Hughes' investigative activity. *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, ¶ 20. Even if taken as hearsay, however, their admission was harmless since Thompson and Doss both testified at trial on the same matters alluded to in Hughes' testimony. *State v. Arcuri*, 11th Dist. Trumbull No. 2015-T-0123, 2016-Ohio-8254, ¶ 60.

{¶16} The second assignment of error is without merit.

{¶17} In the first and fourth assignments of error, Heald challenges the weight and

5

sufficiency of the evidence supporting his conviction for Assault.

{¶18} Criminal Rule 29(A) provides that "[t]he court * * * shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶19} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). "[A] reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the weight of the evidence necessarily must include a finding of sufficiency.'" (Citation omitted.) *State v. Hall*, 11th Dist. Lake Nos. 2019-L-027 and 2019-L-031, 2019-Ohio-4000, ¶ 42.

{¶20} In order to convict Heald of Assault, the State was required to prove beyond

6

a reasonable doubt that he "knowingly cause[d] or attempt[ed] to cause physical harm to another." R.C. 2903.13(A). Ohio law recognizes a person's right to act in "defense of another." "If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in * * * defense of another * * *, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in * * * defense of another." R.C. 2901.05(B)(1). As construed by this court, the statute requires evidence that "tends to support," i.e., it must "serve, contribute, or conduce in some degree or way" to support the use of force in a particular situation. *State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 74 (11th Dist.); *compare State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 49 (8th Dist.) ("evidence 'tends to support' that a defendant used force in self-defense * * * where the evidence in the record is sufficient to raise a question of reasonable doubt of guilt, based on a claim of self-defense, in the mind of a reasonable juror").

{¶21} In cases involving the use of non-deadly force, the elements of a valid self-defense claim are "the defendant was not at fault in creating the situation, and the defendant had a genuine belief that he was in imminent danger of bodily harm." *Petway* at ¶ 43; *compare State v. Tanner*, 9th Dist. Medina No. 3258-M, 2002-Ohio-2662, ¶ 21 ("[t]o establish self-defense for the use of less than deadly force in defense of one's person, the defendant must prove: (1) he was not at fault in creating the situation which gave rise to the event in which the use of non-deadly force occurred; (2) he had honest and reasonable grounds to believe that such conduct was necessary to defend himself against the imminent use of unlawful force; and (3) the force used was not likely to cause

7

Case No. 2021-L-111

death or great bodily harm"). "[O]ne who claims the lawful right to act in defense of another must meet the criteria for the affirmative defense of self-defense." (Citation omitted.) *State v. Koch*, 2019-Ohio-4099, 146 N.E.3d 1238, ¶ 63 (2d Dist.).

{¶22} With respect to sufficiency, Heald argues that "any physical activity that took place on his behalf [by him] was in defense of Scheibelhoffer" and the "State failed to adequately provide evidence that this was not a case of defense of other." Brief of Appellant, at 10. Heald's claims rest on Thompson's testimony regarding the circumstances in which he struck her. There had been earlier disputes between Thompson and Scheibelhoffer regarding their children and the use of racial slurs. On the night in question, May 16, Scheibelhoffer had parked in a space reserved for Thompson. According to Thompson:

> They [Scheibelhoffer and Heald] was parked in my parking spot after calling me a n***er. * * * I walked up to Crystal and asked her who she was calling a n***er. * * * She continued to walk away from me and * * * we kept walking until she got onto her porch. * * * She entered her house and didn't come back outside. I followed her the whole way and onto her porch and I stopped and I never went in her house. * * * I didn't initiate anything. I didn't put my hand on that woman. * * * I said, "who are you calling n***er?" If I was a little loud, I was loud. * * * I asked her * * * to come back outside if she was that bold. She did not come out the door. * * * Of course I wasn't calm. They was parked in my parking spot, calling me a n***er, their kids always messing with my kids and I can't say anything to them like adults?

{¶23} These circumstances do not tend to support a prima facie case for the use of non-deadly force in defense of another, specifically, that Heald had a genuine belief that Scheibelhoffer was in imminent danger of bodily harm. Without more, merely being loud or upset or yelling at someone does not constitute an imminent danger of bodily harm. Thompson had not touched Scheibelhoffer and Scheibelhoffer was inside her

8

house while Thompson remained outside with an open door between them. *State v. Davis*, 10th Dist. Franklin No. 17AP-438, 2018-Ohio-58, ¶ 32 (in rejecting a claim of self-defense, the court "considered the lack of record evidence beyond the cursing and loud talking").

{¶24} Moreover, Heald's conduct was not reasonable inasmuch as he struck Thompson before he could have ascertained the need to use force. Thompson described him as coming "out of nowhere" and Doss testified that he "ran up behind" her. Heald may have believed Scheibelhoffer was in danger, but there is nothing to suggest he was in close enough proximity to confirm or dispel this belief. In this respect, we endorse the judgment of the municipal court that "it was reasonable for [Heald] to go over there and to address whatever he thought needed to be addressed, but * * * he could have addressed that without * * * a physical altercation."

{¶25} Similarly with respect to the weight of the evidence, Heald argues "the State did not demonstrate * * * that [he] *was not* acting in the defense of Scheibelhoffer," i.e., that the State "failed to adequately address [his] position that any physical action on his behalf towards Thompson was justified to protect Scheibelhoffer from harm by Thompson." Brief of Appellant, at 6. As noted above, the evidence in the record does not establish a prima facie case for the use of force in defense of another. Accordingly, the State's burden of persuasion to disprove at least one of the elements of defense of another beyond a reasonable doubt never became operative. *Petway* at ¶ 55.

{¶26} The first and fourth assignments of error are without merit.

{¶27} Heald's third assignment of error raises a claim of ineffective assistance of counsel.

9

{¶28} "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus; *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000). With respect to counsel's performance, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The element of prejudice means "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

{¶29} Heald maintains that counsel was ineffective by failing to call Scheibelhoffer as a witness: "Being that Heald's position appears to be that any action taken by himself was in defense of Ms. Scheibelhoffer, it was imperative that she testify. Without her testimony, it was arguably difficult to persuade the trial court that Heald's actions were justified. Had Ms. Scheibelhoffer testified about her fear and/or risk of physical harm, Heald's arguments that his actions were justified would have been more credible." Brief of Appellant, at 8.

{¶30} We find no error. "The mere failure to subpoena witnesses is not a substantial violation of an essential duty to a client in the absence of [a] showing that [the] testimony * * * would have assisted the defense." (Citation omitted.) *State v Johnson*,

Case No. 2021-L-111

9th Dist. Summit No. 27813, 2016-Ohio-8286, ¶ 20. It is granted that testimony from Scheibelhoffer that she feared physical harm would have made Heald's argument more credible. However, there is no evidence that Scheibelhoffer actually feared physical harm. Any supposition as to what Scheibelhoffer's testimony would have been is purely conjectural. Heald's ineffective assistance argument necessarily fails for lack of supporting evidence in the record.

{¶31} The third assignment of error is without merit.

{¶32} For the foregoing reasons, Heald's conviction for Assault is affirmed. Costs to be taxed against the appellant.


THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.