[Cite as *State v. March-Natali*, 2022-Ohio-4061.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2022-T-0022 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the<br>Newton Falls Municipal Court |
| BENJAMIN THOMAS MARCH-NATALI, | |
| Defendant-Appellant. | Trial Court No. 2021 CRB 00476 |

**O P I N I O N**

Decided: November 14, 2022
Judgment: Affirmed

*Chris Crull*, City of Newton Falls Prosecutor, 20 South Canal Street, Newton Falls, OH 44444 (For Plaintiff-Appellee).

*Mary Ellen Ditchey*, Urban Co., LPA, 434 High Street, N.E., P.O. Box 792, Warren, OH 44482 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Benjamin Thomas March-Natali, appeals his convictions for two counts of Aggravated Menacing following a bench trial in the Newton Falls Municipal Court. For the following reasons, we affirm the convictions.

{¶2} On July 15, 2021, a Complaint was filed charging March-Natali with two counts of Aggravated Menacing, misdemeanors of the first degree in violation of R.C. 2903.21(A).

{¶3} On February 8, 2022, the case was tried to the court. The following testimony was given:

**{¶4}** Detective Steve Lyden of the Newton Falls Police Department testified that at about 8:00 p.m., on July 14, 2022, he responded to a reported disturbance at Advance Auto Parts on Milton Boulevard in Newton Falls. En route to the store, Lyden stopped March-Natali's vehicle which matched the description of the suspect's vehicle. Lyden recovered an unloaded Taurus handgun that March-Natali had in a hip holster.

**{¶5}** Detective Lyden proceeded to Advance Auto Parts where he took written statements from two store clerks who were present during the disturbance. Each clerk testified at trial regarding his impression of the disturbance.

**{¶6}** Joshua Garvey testified that he was working at Advance Auto Parts when March-Natali came in the store wanting to return a toggle switch. After being told he could not return it, March-Natali raised his shirt exposing a handgun and said, "I bet you will" or "you're gonna take it back." Garvey thought the handgun was probably in a holster. March-Natali became angry and hostile. Garvey called the police believing that March-Natali was threatening harm. Then March-Natali left the store.

**{¶7}** Ethan Davenport testified that he was also working at Advance Auto Parts when March-Natali asked to return the toggle switch. Davenport refused to accept the return, and March-Natali "proceeded to make some sort of motion where I [Davenport] saw his weapon tucked into his side of his hip and tell me I am going to return it." As March-Natali was driving away he stopped, pointed at Davenport's and Garvey's vehicles, and mouthed the words, "you better watch out." Davenport understood March-Natali's conduct as threatening harm.

**{¶8}** March-Natali testified in his own defense that he only wanted to exchange the toggle switch, not return it. He swore at the clerks but never threatened them. He did

2

not lift up his shirt but did pull his shorts up because they were falling down. As he was pulling out of the parking lot, he stopped to laugh at the clerks' trucks because they "were a couple of beaters."

{¶9} The municipal court found March-Natali guilty of both counts of Aggravated Menacing but merged them "under the circumstances of this case." The court fined March-Natali $500 and sentenced him to 90 days in the Trumbull County Jail; $300 of the fine and the jail sentence were suspended on the condition that he comply with the terms of probation for one year.

{¶10} On March 16, 2022, March-Natali filed a Notice of Appeal. On appeal, he raises the following assignments of error:

> [1.] Defendant's convictions were against the manifest weight of the evidence.
>
> [2.] Trial counsel was ineffective because he failed to: (A) request a separation of witnesses, (B) impeach witnesses, (C) subpoena any video footage of the incident.
>
> [3.] Defendant was prejudiced by the refusal of the trial court to grant him separate trials of the two complaints under Crim.R. 14.
>
> [4.] Defendant was denied his rights under the Sixth Amendment to self-representation.
>
> [5.] Defendant's due process rights were violated when the State failed to subpoena potentially exculpatory evidence.

{¶11} The assignments of error will be considered out of order.

{¶12} Under the fourth assignment of error, March-Natali claims that "he voiced his desire to represent himself and there was never a colloquy by the court regarding that issue." Brief of Defendant-Appellant at 9, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

3

Case No. 2022-T-0022

{¶13} "The Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." *State v. Gibson*, 45 Ohio St.2d 266, 345 N.E.2d 399 (1976), paragraph one of the syllabus; *Faretta* at 819 (the Sixth Amendment "grants to the accused personally the right to make his defense"); Ohio Constitution, Article I, Section 10 ("[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel").

{¶14} A defendant must explicitly and unequivocally invoke his right to self-representation before a court is obligated to consider whether the defendant may waive his right to representation by counsel. *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 39; *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 30 ("a defendant's unambiguous assertion of the right to self-representation triggers a trial court's duty to conduct the *Faretta* inquiries to establish that the defendant is knowingly and voluntarily waiving his constitutional right to counsel").

{¶15} Where the right to self-representation is invoked after the commencement of trial, "the denial of the right is reviewed under the abuse of discretion standard." *State v. Struble*, 11th Dist. Lake No. 2016-L-108, 2017-Ohio-9326, ¶ 35.

{¶16} In the present case, March-Natali never explicitly or unequivocally asserted his right to self-representation and, therefore, he waived rather than was denied the right. The nearest thing to the assertion of the right to self-representation in the record is the following from the beginning of the bench trial:

The Court: And the defense ready to proceed?

4

Case No. 2022-T-0022

Mr. Zeigler:     Yes, Your Honor.

March-Natali:     Yes.

The Court:     Any opening statement?

March-Natali:     Yes.

The Court:     Your attorney is talking for you.

March-Natali:     Well, I - -

The Court:     If you want to talk, Ben, I'll ask you to speak.  Okay?

[Prosecutor begins making his opening statement.]

The Court:     Wait a minute.  Wait a minute.  There's a problem, Ben?

March-Natali:     Well, I was just conversing with my attorney.

The Court:     Yeah.

March-Natali:     And he started talking.

The Court:     Well, I asked him to start talking.  I asked you to stop talking.

March-Natali:     Oh, I didn't hear you.

The Court:     Okay.  The trial is on now.  You're going to be talking - - Mr. Zeigler is going to be - - he's representing you.  We've done this a long time ago.  You've had prior - - counsel withdrew.  Okay.  If you have an issue, you can write stuff down for him, but I can't hear both people at the same time.

March-Natali:     All right.

* * *

Mr. Ziegler:     We would move to dismiss any tapes of the - - the videotape - - at the store.  It is not offered as evidence.  And any audiotape regarding any phone calls are not offered.  We move to dismiss for lack of evidence.

March-Natali:     It's all hearsay.

5

Case No. 2022-T-0022

Mr. Zeiger:          Because it's all hearsay.

The Court:           Okay.

March-Natali:        I mean, you had the tape.

\* \* \*

The Court:           Hey, Mr. Natali, I've got to tell you, Mr. Ziegler knows the Rules of Evidence and the Rules of Procedure. You really should rely on him when he files a motion and if he's going to file a motion. I've heard you argue motions. I've heard him argue motions. I can guarantee you he knows more about it than you do. Okay?

{¶17} The desire to actively participate in one's own defense does not rise in the present case to an unambiguous assertion of the right to self-representation. *Obermiller* at ¶ 29 ("courts must 'indulge in every reasonable presumption against waiver' of the right to counsel") (citation omitted).

{¶18} The fourth assignment of error is without merit.

{¶19} In the third assignment of error, March-Natali argues that he was prejudiced by the joint trial of his Aggravated Menacing charges in Newton Falls Mun. Case No. CRB-2100476 with a charge of Intimidating a Witness in Newton Falls Mun. Case No. CRB-2100574.

{¶20} Subsequent to the filing of the Aggravated Menacing charges, March-Natali was separately charged with Intimidating a Witness wherein it was alleged that he contacted the Advance Auto Parts and claimed to be a detective in order to learn the names and addresses of the store clerks involved in the July 14 incident. Trial on the two sets of charges was originally scheduled on different days. The Intimidating a Witness trial was rescheduled to the same day as the Aggravated Menacing trial because counsel

6

for March-Natali was ill. Counsel was apparently unaware that the separate charges were then to be tried jointly and moved the court to bifurcate the proceedings at trial. The court assured counsel that it could "separate the charges and the evidence" and inquired if there would be any prejudice from the joint trial. Counsel responded, "I would ask the Court to recess until a later date so that I can fully prepare for the second [Intimidating a Witness] case as well." The court denied the request. March-Natali was acquitted of Intimidating a Witness.

{¶21} "If it appears that a defendant * * * is prejudiced * * * by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires." Crim.R. 14. A trial court's decision regarding the joinder of offenses is reviewed for abuse of discretion. *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 106.

{¶22} The present case demonstrates neither prejudice nor an abuse of discretion. In fact, the record (described above) indicates that there was no issue with joinder per se, but that counsel for March-Natali wished to continue trial on the Intimidating a Witness charge in order to have additional time to prepare as he did not anticipate it being tried on the same date as the Aggravated Menacing charges. Inasmuch as March-Natali was acquitted of the Intimidating a Witness charge, it is difficult to imagine how that part of the proceeding prejudiced him with respect to the Menacing charges.

{¶23} The third assignment of error is without merit.

7

{¶24} Under the second assignment of error, March-Natali contends that trial counsel was ineffective for failing to request a separation of witnesses, impeach witnesses, and subpoena video footage of the incident.

{¶25} "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus; *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000). With respect to counsel's performance, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The element of prejudice means "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

{¶26} Trial counsel was not ineffective for failing to request a separation of witnesses because counsel did, in fact, request and obtain a separation of witnesses:

> Mr. Ziegler: Your Honor, I do want to ask for a separation of witnesses in case there's anybody here who - -
>
> The Court: That'll be granted. All witnesses will have to separate. Sit out in the hallway. You're not allowed to discuss the case or the testimony.

{¶27} With respect to the impeachment of witnesses, March-Natali argues Garvey and Davenport testified at trial that he never brandished the weapon or made direct

8

threats. In the police report of the incident, however, it is noted that March-Natali showed them the gun and threatened to use it. "Failure to point out the inconsistencies in the testimony of the two store clerks prevented the trier of fact from being able to judge the credibility of the witnesses." Brief of Defendant-Appellant at 7.

{¶28} The police report (in the record but not admitted at trial) fails to substantiate March-Natali's claims. The written statements by Garvey and Davenport are substantially consistent with their trial testimony, i.e., that, after refusing to accept the return, March-Natali raised his shirt exposing the handgun while insisting that they will "take it back." Detective Lyden's narrative provides: "Dispatch advised that a customer, who was in the store, was yelling at employees and showed them a gun he had in his waistband and threatened to use it." This description of March-Natali's conduct was provided by dispatch. As to what Lyden was told by Garvey and Davenport, the report states:

> Ethan advised me that Benjamin came into the store and asked where the toggle switches were. Ethan advised that he pointed Benjamin in the right direction and then Benjamin wanted to return one. Ethan advised that the packaging to the one Benjamin had was destroyed and he could not produce proof of purchase. Ethan advised that he told Benjamin that he could not return it. Ethan advised that Benjamin became very angry and started cussing at both Ethan and Joshua. Ethan advised that Benjamin stated, "You are going to return this," as he briefly lifted his shirt, revealing what Ethan described as the pistol grip to a gun. Ethan advised that he was not able to tell if the gun was loaded but was afraid for his life and the life of Joshua. Ethan then provided me a written statement. Joshua gave me the same story as Ethan and also provided a written statement. In Ethan's statement, he also wrote that Benjamin muttered what he believed to have been "watch out."

{¶29} The third purported failure of trial counsel was the failure to subpoena video footage from Advance Auto Parts. At trial, the prosecutor, Detective Lyden, and both store clerks denied that there were either cameras or video of the incident. March-Natali

9

acknowledges this testimony, but "contends that the store did, in fact, have cameras, contrary to the statements of the store clerks." In the absence of evidence to support the contention, however, it is of no consequence.

{¶30} The second assignment of error is without merit.

{¶31} In the fifth assignment of error, March-Natali asserts his due process rights were violated by the State's failure to produce and/or preserve the video of the incident available from Advance Auto Parts: "A video of this incident would have changed the trajectory of the case, potentially exonerating Defendant." Brief of Defendant-Appellant at 10.

{¶32} As noted above, the insistence that video footage exists is not supported by any evidence in the record and, accordingly, is not grounds for finding error. The fifth assignment of error is without merit.

{¶33} The first assignment of error purports to challenge the manifest weight of the evidence, but in substance March-Natali's position encompasses both the sufficiency and the manifest weight of the evidence.

{¶34} The question of whether a conviction is supported by sufficient evidence "invokes a due-process concern and raises the question whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 165; *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997) ("a conviction based on legally insufficient evidence constitutes a denial of due process"). In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond

10

a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶35}** Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "[A] reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the weight of the evidence necessarily must include a finding of sufficiency.'" (Citation omitted.) *State v. Heald*, 11th Dist. Lake Nos. 2021-L-111 and 2021-L-112, 2022-Ohio-2282, ¶ 19.

**{¶36}** In order to convict March-Natali of Aggravated Menacing, the State was required by prove, beyond a reasonable doubt, that he "knowingly cause[d] another to believe that [he] will cause serious physical harm to the person or property of the other person." R.C. 2903.21(A).

**{¶37}** "Aggravated menacing does not * * * require proof that the offender is able to carry out his threat or that he intends to carry it out or believes himself capable of carrying it out," nor does it "require proof that the offender threatened *imminent* serious physical harm." *State v. McDonald*, 11th Dist. Ashtabula No. 2018-A-0008, 2018-Ohio-

11

3845, ¶ 34. "What is necessary to establish the crime of aggravated menacing is the victim's subjective belief that the defendant will cause serious physical harm." (Citation omitted.) *Id.* "[A] person can be convicted of aggravated menacing even though the person has not made any movement toward carrying out the threat." (Citation omitted.) *Id.*

{¶38} As to the sufficiency of the evidence, March-Natali notes: "there were no verbal threats made"; "[t]he only thing Defendant did was lift his shirt"; and "[a]t no time did Defendant point a gun at anyone or even remove the gun from his person." Brief of Defendant-Appellant at 5-6. Contrary to March-Natali's position, it is well-established that merely revealing the possession of a firearm, even in the absence of direct or explicit threats, may be sufficient to sustain an Aggravated Menacing conviction. *State v. El-Hardan*, 2d Dist. Montgomery No. 24293, 2011-Ohio-4453, ¶ 43 ("merely displaying a weapon is enough to support a conviction for Aggravated Menacing when this act causes the victim to believe that the defendant will cause him serious physical harm"); *State v. Yoder*, 6th Dist. Erie No. E-19-031, 2020-Ohio-4546, ¶ 16 ("appellant [was] really intimidating, shaking, staring, angry, red-faced, and looming over them with a gun in his waist"); *State v. Goodwin*, 10th Dist. Franklin Nos. 05AP-267 and 05AP-268, 2006-Ohio-66, ¶ 25 ("appellant arrived at the Price and Huggard residence, banged on the door, stood there, and did not respond to Huggard and Price's invitations for appellant to come into the house" and, "[t]hen, without talking, appellant lifted his shirt, revealing a firearm, and then he left").

{¶39} As to the manifest weight of the evidence, March-Natali argues "there was no corroborating evidence of the two store clerk's [sic] testimony, * * * no independent

12

witnesses and no physical evidence to support the allegations." Brief of Defendant-Appellant at 6.

{¶40} Initially, we note that neither physical nor corroborating evidence is necessary to sustain a conviction. *In re C.S.*, 10th Dist. Franklin No. 11AP-667, 2012-Ohio-2988, ¶ 30 (absence of corroborating or physical evidence does not negate witness testimony). This is particularly true with respect to a crime such as Aggravated Menacing where the essential act is causing someone to believe something. In the present case, Garvey's and Davenport's testimony was consistent with the other's testimony and consistent with what was reported to the police. In some Aggravated Menacing cases, the failure or delay of the alleged victim to report the menacing conduct has been argued to be evidence that the victim did not actually fear physical harm. Here, the police were contacted immediately and the two clerks' conduct was consistent with their statements that they felt threatened by March-Natali. We find no cause to overturn the verdict.

{¶41} The first assignment of error is without merit.

{¶42} For the foregoing reasons, March-Natali's convictions for Aggravated Menacing are affirmed. Costs to be taxed against the appellant.


THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

Case No. 2022-T-0022